UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

    Andre Gentry,                                    Case No. 15-20990-beh

                Debtor.                              Chapter 13

**DECISION AND ORDER SUSTAINING DEBTOR'S
OBJECTION TO PROOF OF CLAIM**

Almost five years after filing his Chapter 13 bankruptcy case, debtor Andre Gentry has filed an objection to a proof of claim.

On February 5, 2015, Mr. Gentry filed his original Chapter 13 plan, denying that he anticipated having any domestic support obligation (DSO) arrearage claims. ECF Doc. No. 2, at 2. On April 7, 2015, the State of Wisconsin filed a proof of claim in the amount of $5,382.13 for "public assistance overpayment for ChildCare," which it listed as a claim entitled to priority status under 11 U.S.C. § 507(a)(1)(B). ECF Proof of Claim No. 5-1. On the same date, the State also filed an objection to confirmation of Mr. Gentry's Chapter 13 plan, as it failed to provide for the State's priority claim, pursuant to 11 U.S.C. §§ 1322(a)(2) and 1328(a)(2) as a non-dischargeable domestic support obligation. ECF Doc. No. 24. After a hearing at which counsel for both the debtor and the State appeared, the Court sustained the objection and the

debtor thereafter amended his plan to meet the objection. ECF Doc. Nos. 28, 39. The portion of the amended plan addressing the State's objection provides:

> Any Domestic Support Obligation under § 507(a)(1)(B) shall be paid with all remaining funds. Any § 507(a)(1)(B) claim might not be paid in full, as allowed by § 1322(a)(4). . . Upon the completion of the payment [sic] under the Plan, if there remains any balance on any § 507(a)(1)(B) claim, it will be paid by the Debtor after the case is over. The debtor acknowledges that, as a Domestic Support Obligation, any § 507(a)(1)(B) claim that remains is non-dischargeable. There shall be no dividend to general unsecured non-priority creditors.
>
> Debtors [sic] owe a Domestic Support Obligation to the State of Wisconsin – Department of Children and Families in the amount of $5,382.13.

ECF Doc. No. 39, at 3. The Court confirmed the amended plan on August 4, 2015. ECF Doc. No. 49.

On June 27, 2019, the Seventh Circuit Court of Appeals issued *In re Dennis*, 927 F.3d 1015 (7th Cir. 2019), which held that a debtor's obligation for overpayment of benefits of child care assistance payments to which she was not statutorily entitled, and of a supplemental nutrition assistance program, were not "domestic support obligations." Several months after that decision was released, Mr. Gentry filed the instant claim objection, seeking to have the State of Wisconsin's proof of claim reclassified as a general nonpriority unsecured claim. The State objected, and the Court requested briefing on the matter. The Chapter 13 trustee did not take a position.

The Court has jurisdiction under 28 U.S.C. § 1334 and the Eastern District of Wisconsin's July 16, 1984, order of reference entered under 28 U.S.C. § 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(B).

## PARTIES' ARGUMENTS

The State's written response does not offer a substantive argument against the Seventh Circuit's *In re Dennis* holding itself, but makes several points arguing that the decision should not be considered in this objection to claim context. First, the State asserts that a confirmed plan is binding, and so it should preclude an attempt to relitigate the priority status of its allowed claim. ECF Doc. No. 187, at 2 (citing *Bullard v. Blue Hills Bank*, 575 U.S. 496, 135 S. Ct. 1686, 1692 (2015) ("When the bankruptcy court confirms a plan, its terms become binding on debtor and creditor alike.")). Moreover, the State asserts that a confirmed plan "has preclusive effect, foreclosing re-litigation of 'any issue actually litigated by the parties and any issue necessarily determined by the confirmation order.'" *Id.* (quoting 8 Collier ¶ 1327.02[1][c], at 1327–6).

Second, as further support, the State cites to *Adair v. Sherman*, 230 F.3d 890 (7th Cir. 2000), urging that debtor should be barred from challenging a proof of claim after confirmation because "allowing a debtor to challenge an issue [he] could have raised at the confirmation hearing 'destroys the finality that bankruptcy confirmation is intended to provide.'" ECF Doc. No. 187, at 3 (quoting *Adair*, 230 F.3d at 895). The State points out that before *In re Dennis* was decided, there was no binding precedent to the contrary in this Circuit, so Mr. Gentry was free to make a *Dennis*-like argument in 2015 before his plan was confirmed. *Id.* at 4. The State asserts that Mr. Gentry's failure to make such an argument, and this Court's subsequent order that confirmed the plan

treating the State's DSO claim as a priority claim, and Mr. Gentry's failure to appeal the confirmation order together preclude his ability now to relitigate the treatment of the claim. *Id.*

Finally, the State points to *Alvear-Velez v. Mukasey*, 540 F.3d 672, 678 (7th Cir. 2008), which explains that "changes in case law almost never provide a justification for instituting a new action arising from the same dispute that already has been litigated to a final judgment . . ." *Id.* at 4–5. A confirmed plan is *res judicata,* the State says, meaning that changes in the law after a final judgment should not belatedly alter the judgment.

The debtor submitted a written reply, contending that *res judicata* does not apply here because the priority status of the State's proof of claim was not actually litigated. Mr. Gentry points out that the hearing on his original objection to the State's proof of claim lasted three minutes. ECF Doc. No. 190, at 3 (citing ECF Doc. No. 28). He contends that the nature of the claim "was not litigated" because "it was settled case law in the Eastern District of Wisconsin that overpaid governmental benefits qualified as domestic support obligations owed to a governmental unit" and to argue otherwise "ignores the reality of 2015." *Id.* (citing *Wis. Dep't Workforce Dev. v. Ratliff* (*In re Ratliff*), 390 B.R. 607 (E.D. Wis. 2008) (reversing bankruptcy court and holding that debt to State for overpayment of food stamps for family of four was a DSO priority claim) and *In re Schauer,* 391 B.R. 430 (Bankr. E.D. Wis. 2008) (finding debt to State for overpayment of childcare subsidy was a non-dischargeable DSO priority claim)). Mr. Gentry asserts that he challenged no portion of the State's

claim "but rather acquiesced to settled case law in the district and amended his plan to provide for all priority claims as filed." *Id.* at 4.

## DISCUSSION

Neither the Bankruptcy Code nor its companion Rules set a deadline for objection to proofs of claim. *In re Hovis*, 356 F.3d 820, 822 (7th Cir. 2004). In fact, debtor's original plan, based on the district's model, states "Objections to claims may be filed before or after confirmation." ECF Doc. No. 2, at 2. Mr. Gentry filed this objection after his plan was confirmed, and after a change in law interpreting one aspect of the Bankruptcy Code. *See In re Dennis*, 927 F.3d 1015 (7th Cir. 2019). Therefore, Mr. Gentry's claim objection is viable now.

The State's argument against Mr. Gentry's claim objection is based on *res judicata* (a/k/a claim preclusion) or collateral estoppel (a/k/a issue preclusion) of the confirmed Chapter 13 plan. These doctrines—which are similar, but remain wholly different—provide that "a final judgment on the merits bars further claims by parties or their privies based on the same cause of action" (*res judicata*) and "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation" (issue preclusion). *Montana v. United States*, 440 U.S. 147, 153 (1979).

Mr. Gentry argues that neither doctrine applies because he did not actually litigate the claim's status, but acquiesced to "settled case law in the district." Contrary to this argument, the Court finds that the parties *did*

actually litigate the question of whether the State's proof of claim status. The debtor must have had a basis to initially treat the State's claim as unsecured. The State then lodged an objection. Objections to confirmation are contested proceedings. Fed. R. Bankr. P. 9014 and 3015(f). In short, before the hearing, debtor and the State held two different legal views. Judge McGarity held a hearing and ruled, concluding the claim was entitled to priority. Mr. Gentry then amended his plan accordingly and later the Court entered a confirmation order.

Nonetheless, the State's reliance on *Adair*, 230 F.3d 890, as a basis to avoid any post-confirmation analysis, is not apt. The creditor in *Adair* filed a claim to which the debtor did not object. Later, however, the debtor sued under the Fair Debt Collection Practices Act, alleging that the creditor and its law firm had a practice of overstating the value of the collateral. The Seventh Circuit held that later statutory contention was barred by the debtor's failure to object in the bankruptcy itself. Once the bankruptcy proceeding ended, the accuracy of the creditor's claim was established. *Adair* treated the amount of the debt as established within the bankruptcy as conclusive between the same parties in a subsequent litigation—a normal application of issue preclusion. As Mr. Gentry's brief notes, the Seventh Circuit distinguished the defense raised in *Adair* from that available in a single suit, based on procedural posture:

> [I]ssue preclusion has no role within a unitary, ongoing proceeding. *Adair* and similar decisions that arise from sequential suits are irrelevant within one suit. What matter within a single suit are the deadlines set by statute and rule, plus the law of the case and judicial estoppel.

*In re Hovis*, 356 F.3d at 822. In other words, issue preclusion, or collateral estoppel, may apply when "later courts should honor the first actual decision of a matter that has been actually litigated." *Chicago Truck Drivers, Helpers & Warehouse Union (Indep.) Pension Fund v. Century Motor Freight, Inc.*, 125 F.3d 526, 530 (7th Cir. 1997) (quoting 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4416, at 136 (1981 & Supp.1997)). Likewise, the State's argument here under *Alvear-Velez,* asserting *res judicata* or claim preclusion, also must give way, because that defense too, generally applies only where there are multiple proceedings, and not disputes within a single suit.

Here, Mr. Gentry's case is a single suit, and "[w]hat matter within a single suit are the deadlines set by statute and rule, plus law of the case and judicial estoppel." *In re Hovis*, 356 F.3d at 822. Therefore, following the *In re Hovis* instructions, the Court first turns to any deadlines for objection to a proof of claim under either the Code, the Rules, or the confirmation order. As described previously, there are no deadlines to procedurally foreclose Mr. Gentry from objecting to the State's claim now.

Second, the Court considers that judicial estoppel does not apply here. Three factors generally inform a court as to whether to invoke its discretion to apply judicial estoppel: "(1) a party's later position must be clearly inconsistent with its earlier position; (2) the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent opposition in a later proceeding would create the perception that

either the first or second court was misled; and (3) the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *In re O'Malley*, 601 B.R. 629, 643 (Bankr. N.D. Ill. 2019) (quoting *In re Knight-Celotex, LLC*, 695 F.3d 714, 721–22 (7th Cir. 2012)) (internal quotations omitted). Because Mr. Gentry did not prevail on a different argument earlier, judicial estoppel does not bar his arguments now that the State's claim should be unsecured.

Last, the Court considers "law of the case." A final order in a bankruptcy case is not just law of the case, it generally has preclusive effect on later proceedings in the same case. *In re Ranieri*, 598 B.R. 450, 457 (Bankr. N.D. Ill. 2019). The law of the case doctrine is a rule of practice, based upon long-standing policy that once an issue is litigated and decided, that should be the end of the matter. *United States v. U. S. Smelting Ref. & Min. Co.*, 339 U.S. 186, 198 (1950) (citing *Messinger v. Anderson*, 225 U.S. 436, 444 (1912)). But law of the case is not an inflexible command:

> In the absence of statute the phrase, 'law of the case,' as applied to the effect of previous orders on the later action of the court rendering them in the same case, merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit on their power.

*Messinger*, 225 U.S. at 444. Some flexibility is afforded, for instance, if there is an intervening change in the law, or other special circumstance warrants reexamining the claim. *United States v. Thomas*, 11 F.3d 732, 736 (7th Cir. 1993) (declining to revisit initial decision grounded on alternate bases) (citing

*United States v. Mazak*, 789 F.2d 580, 581 (7th Cir. 1986) (noting that law of the case is flexible, unlike *res judicata*)).

"[A]s a rule, courts should be loathe to [revisit prior decisions] in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'" *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 817 (1988) (quoting *Arizona v. California*, 460 U.S. 605, 618, n.8 (1983)). In sum, intervening case law may be considered, but it should be weighed carefully.

While "manifest injustice" is undefined in the Code, various courts have observed:

> There is no judicial consensus … but several courts have applied the Black's Law Dictionary definition, which states that "manifest injustice" is an error in the trial court that is direct, obvious, and observable, such as a defendant's guilty plea that is involuntary or that is based on a plea agreement that the prosecution rescinds. A party may only be granted reconsideration based on manifest injustice if the error is apparent to the point of being indisputable. In order for a court to reconsider a decision due to "manifest injustice," the record presented must be so patently unfair and tainted that the error is manifestly clear to all who view it.

*TI Consulting, Inc. v. Sweeney* (*In re Centaur, LLC*), No. 10-10799 (KJC), 2019 WL 2122952, at *3 (Bankr. D. Del. May 13, 2019) (quoting *In re Roemmele*, 466 B.R. 706, 712 (Bankr. E.D. Pa. 2012)).

Mr. Gentry does not argue that a manifest injustice occurred as a result of the April 2015 ruling. He argues that the recent Seventh Circuit *In re Dennis* decision is now controlling, supports his timely claim objection, and warrants

reclassification of the State's claim from priority to unsecured. The Court recognizes not only that the law of the case doctrine is a flexible one, but that the history of our "settled law in the district"—the district court's reversal of the bankruptcy court's conclusion in *In re Ratliff*—suggests that a careful reader of the Code could have disagreed, even in 2015, as to whether Congress intended a claim for repayment to a governmental unit of childcare assistance payments to be classified as DSO priority debt. Now that intervening, controlling caselaw means that our own "district precedent" (*In re Ratliff*) is in error, this Court is bound to follow *In re Dennis*, and will do so here, as Mr. Gentry's case is still open.

Accordingly,

IT IS HEREBY **ORDERED** that the debtor's objection to the State's proof of claim is **SUSTAINED**.

Dated: May 13, 2020

By the Court:

Beth E. Hanan
United States Bankruptcy Judge