UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

    Andre Gentry,                               Case No. 15-20990-beh

             Debtor.                       Chapter 13

**DECISION AND ORDER DENYING (1) STATE OF WISCONSIN'S MOTION TO ALTER OR AMEND THE COURT'S MAY 13, 2020 ORDER AND (2) DEBTOR'S MOTION TO MODIFY HIS CONFIRMED PLAN**

The rules used to promote, and occasionally except from, finality and preclusion in civil cases sometimes don't yield such a snug fit in bankruptcy cases, where serial discrete contests can be resolved all within the framework of a single debtor's case, yet they are workable. At a next juncture, however, Code provisions may set a roadblock. This case is an illustration.

## BACKGROUND

Andre Gentry filed his case on February 5, 2015 and filed his Chapter 13 plan the same day. ECF Doc. Nos. 1, 2. His plan did not provide for the payment of any domestic support obligations. ECF Doc. No. 2, at 2. On April 7, 2015, the State of Wisconsin, Department of Children and Families, filed a proof of claim, Claim No. 5, and also objected to confirmation of Gentry's plan, asserting that the State's claim, for public assistance overpayment for child care, was a DSO priority claim under 11 U.S.C. section 507(a)(1)(B). ECF Doc. No. 24. After a hearing, the debtor filed an amended plan to pay the State's claim and resolve the objection. ECF Doc. No. 39. The amended plan specifically provided:

> Any Domestic Support Obligation under § 507(a)(1)(B) shall be paid with all remaining funds. Any § 507(a)(1)(B) claim might not be paid in full, as allowed by § 1322(a)(4). . . . Upon completion of the payment under the Plan, if there remains any balance on any § 507(a)(1)(B) claim, it will be paid by the Debtor after the case is over. The debtor acknowledges that, as a Domestic Support

> Obligation, any § 507(a)(1)(B) claim that remains is non-dischargeable. . . .
>
> Debtors [sic] owe a Domestic Support Obligation to the State of Wisconsin – Department of Children and Families in the amount of $5,382.13.

*Id.*, at 3. After another unrelated amendment, the court confirmed the debtor's plan on August 4, 2015. ECF Doc. No. 49.

On January 16, 2020, the debtor filed an objection to the State's Claim No. 5, based on intervening Seventh Circuit law, *In re Dennis*, 927 F.3d 1015 (7th Cir. 2019). ECF Doc. No. 185. The debtor urged that that the public assistance overpayment for child care was not in the nature of support, because the debtor received money that he was not statutorily entitled to receive, and so the State's claim, following *Dennis*, should be reclassified from priority to non-priority general unsecured. *Id.* The State responded, arguing that the debtor was barred from relitigating the priority status of the State's claim, "because the confirmed plan is a final, binding judgment entitled to preclusive effect." ECF Doc. No. 187, at 2. The State cited *Bullard v. Blue Hills Bank*, 575 U.S. 496 (2015); *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260 (2010); *Adair v. Sherman*, 230 F.3d 890 (7th Cir. 2000); and *In re Howe*, 913 F.2d 1138 (5th Cir. 1990). The State also pointed to *Alvear-Velez v. Mukasey*, 540 F.3d 672 (7th Cir. 2008), to assert that "changes in case law *almost never* provide a justification for instituting a new action arising from the same dispute that already has been litigated to a final judgment." *Id.*, at 4–5 (emphasis added).

In reply, the debtor argued, in part, that while a confirmation order may be final for purposes of appeal, it cannot preclude post-confirmation claim objections while the Chapter 13 case is open, generally citing *Bullard* and *Espinosa*. ECF Doc. No. 190. The debtor pointed to various provisions of the Code and Bankruptcy Rules that govern claim objections, without prescribing deadlines for the same, and distinguished the facts and analysis of *Adair* in part by citing to *In re Hovis*, 356 F.3d 820 (7th Cir. 2004). *Id.*

In the course of pursuing his claim objection, the debtor did not seek permission to modify his confirmed plan, nor did the State expressly argue against an opportunity for modification, and so that issue was never before the Court.

On May 13, 2020, the Court issued a decision and order, finding the Seventh Circuit's intervening decision of *In re Dennis* to be a sufficient reason to depart from the law of the case and to sustain the debtor's objection to the State's claim. ECF Doc. No. 195.

On May 27, 2020, the State filed a motion to alter or amend the judgment due to errors of fact and law. ECF Doc. No. 199. The debtor filed a response after an initial hearing at which the Court allowed supplemental briefing. ECF Doc. No. 200. Also, on August 4, 2020, the debtor filed a motion to modify his plan, directing that, as of May 13, 2020, the trustee make no further payments on Claim No. 5 as a priority claim, and that the balance of the State's claim "shall be treated as a general unsecured claim and shall share in any distribution that allowed general unsecured claims are entitled to receive on a pro rata basis." ECF Doc. No. 212. The State objected to the proposed modification, asserting that 11 U.S.C. § 1329 does not authorize a debtor to modify a confirmed plan to reclassify a claim. *See* ECF Doc. Nos. 211 and 215.

The Court held a combined hearing on the State's motion to amend the judgment and the debtor's motion to modify the plan, and now issues this decision resolving both matters.

## DISCUSSION

**A.     The State's Motion to Alter or Amend the May 13, 2020 Order**

    **1.     Applicable law**

The State's motion to alter or amend the Court's prior order was brought under Federal Rule of Civil Procedure 59(e), incorporated by Bankruptcy Rule 9023. "A Rule 59 motion will be successful only where the movant clearly establishes '(1) that the court committed a manifest error of law or fact, or (2)

that newly discovered evidence precluded entry of judgment.'" *Cincinnati Life Ins. Co v. Beyrer*, 722 F.3d 939, 954 (7th Cir. 2013) (quoting *Blue v. Hartford Life & Accident Ins. Co.*, 698 F.3d 587, 598 (7th Cir. 2012). Rule 59(e) provides a narrow avenue for reconsideration: "'Rule 59(e) allows the movant to bring to the [] court's attention a manifest error of law or fact, or newly discovered evidence. It does not provide a vehicle for a party to undo its own procedural failures, and it certainly does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the [] court prior to the judgment.'" *Cincinnati Life Ins. Co.*, 722 F.3d at 954 (quoting *Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 529 (7th Cir. 2000) (internal citation and quotation marks omitted)).

### 2. Analysis

While the State captions its motion as one to amend the judgment "due to errors of fact and law," the body of the motion focuses solely on argument as to legal error. Specifically, the State asserts that the Court committed a manifest error of law by disregarding *Espinosa*, *Bullard*, and the Seventh Circuit's decision in *Germeraad v. Powers*, 826 F.3d 962 (7th Cir. 2016), and by relying instead on contrary authority in *Hovis*, to reach two conclusions: (1) that the confirmation order was not a final judgment entitled to preclusive effect; and (2) that a bankruptcy case is a single, unitary case. The Court will address each of these allegedly erroneous conclusions in turn.

#### a. The preclusive effect of the confirmation order

In framing its argument, the State describes the Court's May 13, 2020 decision as holding that (1) a confirmation order is not a final appealable order, and (2) a confirmation order is not preclusive. *See, e.g.*, ECF Doc. No. 199, at 2 ("Rather than being a final and binding order entitled to preclusive effect, the Court held that the confirmed plan was merely the law of the case, which accorded the order a non-final status that is subject to revisiting at the Court's

discretion.");[1] *id.* at 2–3 (describing the Court as holding that "[t]he confirmed plan was accordingly not a final judgment entitled to preclusive effect"); *id.* at 4–5 ("[I]t is incontrovertible that an order confirming a plan is a final, appealable order. . . . It is not merely the law of the case.").

The State misapprehends the Court's ruling. Nowhere in its decision did the Court conclude that the confirmation order was *not* a final order, or that it was not entitled to preclusive effect. Rather, the Court decided that the final confirmation order *ordinarily* would be entitled to preclusive effect—as the law of the case, in accord with *Hovis*—but that intervening case law provided a basis to revisit the priority status of the State's claim.

On this point, *Hovis* is not inconsistent with either *Bullard* or *Espinosa*. In *Bullard*, the Supreme Court examined whether a particular order (an order denying confirmation of a proposed Chapter 13 plan) was "final" and appealable for purposes of 28 U.S.C. § 158(a). And *Espinosa* concerned a creditor's challenge to a confirmed plan—brought years after the plan had been confirmed, fully performed and the debtor discharged—on the basis that the confirmation order was void under Federal Rule of Civil Procedure Rule 60(b)(4). Neither *Bullard* nor *Espinosa* dealt with the type of alleged "collateral attack" at issue here and in *Hovis*: a claim objection filed after plan confirmation, in an open and active case. While *Bullard* and *Espinosa* speak to the preclusive effect of a confirmation order, neither case dictates *which*

---

[1] Here, the State seems to suggest that only non-final interlocutory orders are subject to the law of the case doctrine, and that the doctrine has no application to final orders. It is true—at least within the Seventh Circuit—that "[r]econsideration of a non-final order 'is governed by the doctrine of the law of the case.'" *In re Kuchenbecker*, No. 10-33067-GMH, 2015 WL 5675644, at *1 (Bankr. E.D. Wis. Sept. 25, 2015) (quoting *Santamarina v. Sears, Roebuck & Co.,* 466 F.3d 570, 572 (7th Cir. 2006)). But the same appears to hold for reconsideration of final orders, *see Galvan v. Norberg,* 678 F.3d 581, 587 (7th Cir. 2012). Admittedly, within the bankruptcy context, there are mixed views on whether the "law of the case" is the proper—or only—doctrine to govern review of final orders. *Compare In re Ranieri*, 598 B.R. 450, 455–57 (Bankr. N.D. Ill. 2019) (principles of claim preclusion, rather than law of the case, limit review of final orders in bankruptcy); *In re Xpedior Inc.*, 354 B.R. 210, 224–29 (Bankr. N.D. Ill. 2006) (both *res judicata* and the law of the case bar revisiting a Chapter 11 plan confirmation order); and *In re Contreras*, 571 B.R. 789, 792 (Bankr. N.D. Ill. 2017) (the principles of *res judicata* announced in *Adair* do not apply when a debtor "makes an objection [to a claim], as part of their bankruptcy case in the bankruptcy court," even after confirmation of a plan).

preclusion doctrine a court should apply in an ongoing bankruptcy case like this one—in other words, they do not instruct that the "law of the case" is inapplicable, and that, for instance, only traditional principles of issue/claim preclusion instead should apply. They are not, as the State claims, "squarely at odds" with *Hovis*.

On the applicability of *Espinosa* in particular, a recent bankruptcy case from within the Seventh Circuit is instructive. *See In re Waldschmidt*, 605 B.R. 860 (Bankr. N.D. Ind. 2019). In *Waldschmidt*, the Chapter 13 trustee objected to a creditor's untimely claim, which was filed after the debtor's plan—which provided for the claim—was confirmed. The creditor asserted that the trustee's objection was barred by *res judicata*, due to the binding nature of the confirmed plan. The bankruptcy court disagreed, stressing the distinction between the claims-allowance process and the confirmation process. In addressing the creditor's reliance on *Espinosa*, the court said this:

> *Espinosa* is readily distinguishable because it involved a challenge to the validity of the court's order confirming the debtor's plan. That is not what the trustee is doing here. The trustee is challenging Midwest's claim; she is not challenging the validity of the plan, the order confirming it or seeking to undo any of the plan's provisions. If she is not successful, the claim will be allowed, the plan will remain undisturbed and as the holder of an allowed claim Midwest will be entitled to share in a distribution. If she is successful, Midwest's claim will be denied, but the plan will still remain undisturbed. Either way, a decision concerning Midwest's claim will not change the terms of the confirmed plan; something else will have to happen before that occurs.

605 B.R. at 867. The same logic applies here. The Court's May 13, 2020 decision and order did not change the terms of the debtor's confirmed plan (which expressly designated and provided for payment of the State's claim as a priority claim under section 507(a)(1)(B)). "Something else"—here, a successful motion to modify the plan—"will have to happen before that occurs." *Id.*

Finally, neither *Bullard* nor *Espinosa* represent a conflict with existing Seventh Circuit case law at the time *Hovis* was issued. In 2004 (like now), it was not questioned that an order confirming a plan was (1) a final, appealable

order, and (2) entitled to preclusive effect. *See, e.g.*, *Matter of Wade*, 991 F.2d 402, 406 (7th Cir. 1993) ("Several types of bankruptcy orders are final and appealable, for example, . . . confirmation of a bankruptcy plan."); *In re Harvey*, 213 F.3d 318, 321 (7th Cir. 2000) ("It is a well-established principle of bankruptcy law that a party with adequate notice of a bankruptcy proceeding cannot *ordinarily* attack a confirmed plan. . . . The reason for this is simple and mirrors the general justification for *res judicata* principles—after the affected parties have an opportunity to present their arguments and claims, it is cumbersome and inefficient to allow those same parties to revisit or recharacterize the identical problems in a subsequent proceeding.") (emphasis added).

In sum, the State has not established that the Court committed a manifest error of law. First, the Court did not hold, as the State argues, that a confirmation order is not a final appealable order, or that such an order is not ordinarily entitled to preclusive effect. Nor did the Court clearly err by relying on *Hovis* (which does not patently conflict with *Bullard* or *Espinosa*) to conclude that the law of the case doctrine—rather than the principles of issue and claim preclusion—applied in the circumstances.

### b. The nature of a bankruptcy case

As its second argument, the State asserts that the Court committed a manifest error of law by concluding that a bankruptcy case is a single, unitary case. In support, the State juxtaposes *Bullard* and *Germeraad* with *Hovis,* as presenting mutually exclusive and inherently conflicting descriptions of a bankruptcy case: as either a single, unitary proceeding, or a collection of multiple proceedings. *See, e.g.*, ECF Doc. No. 199, at 3 ("After the Seventh Circuit decided *Hovis*, the U.S. Supreme Court, in a unanimous decision, held that—contrary to *Hovis*—bankruptcy cases are not single, unitary proceedings. *Bullard v. Blue Hills Bank*, 575 U.S. 496, 135 S. Ct. 1686, 1692 (2015). Rather, the Court explained: 'The rules are different in bankruptcy. A bankruptcy case involves 'an aggregation of individual controversies,' many of which would exist

as stand-alone lawsuits but for the bankrupt status of the debtor.' *Id.*"); *id.* at 4 ("*Bullard* and *Germeraad* make clear that bankruptcy cases are unique. Where issues of preclusion—as the court said in *Hovis*—have no role in an ongoing traditional civil action (a 'unitary, ongoing proceeding'), there is no single, unitary proceeding in a bankruptcy case. There are instead a series of controversies, each culminating in a final, appealable order.").

The State characterizes *Bullard* and *Germeraad*—both of which examined whether a particular order was "final" and appealable for purposes of 28 U.S.C. § 158(a)—so as to create a false dichotomy. In *Bullard*, the Supreme Court observed that there can be several distinct "proceedings" within the life of a bankruptcy case that can result in final, immediately appealable orders—while simultaneously recognizing that these discrete and often interrelated proceedings all take place within the "umbrella" of the single bankruptcy case. *See also Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 140 S. Ct. 582, 586–87 (2020) ("It is thus common for bankruptcy courts to resolve discrete controversies definitively while the umbrella bankruptcy case remains pending. . . . [C]ontroversies adjudicated during the life of a bankruptcy case may be linked, one dependent on the outcome of another.").

A bankruptcy case is both a single case initiated by an order for relief, and a collection of multiple proceedings from which immediate rights of appeal lie. This is not a "new" concept first articulated in *Bullard*. *See, e.g.*, *Matter of James Wilson Assocs.*, 965 F.2d 160, 166 (7th Cir. 1992) ("A bankruptcy proceeding, in contrast [to ordinary federal litigation], is often a conglomeration of separate adversary proceedings that, but for the status of the bankrupt party which enables them to be consolidated in one proceeding, would be separate, stand-alone lawsuits. Parties to those separate proceedings should not have to wait for the end of the entire bankruptcy proceeding before they can appeal, and therefore finality in bankruptcy has been interpreted to embrace the final decision in any adversary proceeding that, but for its bankruptcy setting, would be a separate suit."); *Matter of FBN Food Servs., Inc.*, 82 F.3d 1387, 1392

(7th Cir. 1996) ("A single bankruptcy case may comprise many separate controversies, so we have held that a final decision for purposes of § 158(d) is one that would be immediately appealable in a stand-alone action.").

Finality for purposes of bankruptcy appeal should not be conflated with judicial doctrines designed to prevent relitigation of decided issues. Whether an order is "final" within the meaning of 28 U.S.C. § 158 is not dispositive of whether that order later may be revisited—because, for example, intervening case law has established grounds for prospective relief. Nothing in the *Bullard* or *Germeraad* holdings dictate that the "law of the case" is inapplicable here, where the debtor's bankruptcy case is still open and active, and the debtor has yet to complete his plan payments and receive a discharge.

For all of these reasons, the State has not established that the Court committed a manifest error of law by relying on *Hovis*, which is not contrary to the holdings of *Bullard, Espinosa*, or *Germeraad*, so the State's motion to alter or amend the Court's May 13, 2020 order must be denied.

**B.     The Debtor's Motion to Modify the Plan**

    **1.     Applicable law**

Modification of a plan after confirmation is governed by 11 U.S.C. § 1329(a), which provides:

> At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to—
>
> > (1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;
> >
> > (2) extend or reduce the time for such payments;
> >
> > (3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan; or
> >
> > (4) reduce amounts to be paid under the plan by the actual amount expended by the debtor to purchase health

> insurance for the debtor (and for any dependent of the debtor if such dependent does not otherwise have health insurance coverage) [subject to certain conditions not relevant here].

11 U.S.C. § 1329(a).

Modifications under section 1329(a) are not limitless, but instead are allowed in only the four limited circumstances identified in the statute. *Matter of Witkowski*, 16 F.3d 739, 745 (7th Cir. 1994).

### 2. Analysis

The State objects to the debtor's attempt to modify the plan to treat the remainder of its claim as a general unsecured claim, asserting that section 1329(a) does not authorize the reclassification of a claim (citing *In re Nolan*, 232 F.3d 528, 532 (6th Cir. 2000) (holding that Section 1329 does not authorize reclassification of claims); *In re Smith*, 259 B.R. 323, 327 (Bankr. S.D. Ill. 2001) ("[T]he Court is without discretion to approve a modification that falls outside the limits of § 1329(a.)")). ECF Doc. No. 211, at 4.

The debtor, in response, asserts that his proposed modification falls within the scope of section 1329(a)(1), which allows debtors to change the payment of classes of claims: "The Debtor has done that by modifying his plan to decrease the future payment of the State's class of claims (it is a class by itself) to $0.00 and treating it as a general unsecured creditor." ECF Doc. No. 214, at 2. The debtor further argues that "[m]odifying a plan to change the status of a claim is allowed," citing *In re Toliver*, 603 B.R. 420 (Bankr. E.D. Wis. 2019), which the debtor describes as "allowing surrender of vehicle and reclassifying a secured claim as an unsecured claim."

The debtor has misinterpreted the court's ruling in *Toliver*. In *Toliver*, the debtor owned a car that was worth less than the amount of the claim it secured. Her confirmed Chapter 13 plan provided that the trustee would pay the secured portion of the claim ($11,525) in full, with interest, and the unsecured portion of the claim (about $1,850) in full, without interest. The debtor later moved to modify her confirmed plan, proposing to surrender her

vehicle in satisfaction of the secured portion of the claim, and to discontinue trustee payments on that portion of the claim. The court concluded that the debtor's proposed modification fell within the scope of section 1329(a)(1), because it reduced the amount of payments on the creditor's secured claim to $0. 603 B.R. at 422. Notably, in distinguishing *In re Nolan*, the court observed:

> *Nolan* also finds a limitation on modifying confirmed plans to surrender collateral based on its conclusion that § 1329(a)(1) does not allow a debtor to reclassify claims from secured to unsecured after plan confirmation. Whatever the merits of that conclusion, it provides no reason to limit Toliver's proposed modification, *which does not purport to reclassify CPS's secured claim.* Rather, the plan as modified provides for CPS's secured claim by surrender of the vehicle and pays CPS's unsecured claim in full, as the plan previously provided.

*Id.* at 423 (emphasis added). *Toliver*, in short, did not allow a plan modification to reclassify a claim.

The debtor has offered no other support for his argument that section 1329(a) allows him to reclassify the State's claim in the manner proposed—from priority to non-priority general unsecured—and the Court has found none. Because the proposed modification does not fall within the scope of the four limited circumstances identified in section 1329(a), the debtor's motion to modify the plan must be denied.

The outcome here might have been different if the debtor's confirmed plan had read differently—if, for example, it had proposed simply to pay "all allowed § 507(a)(1)(B) priority claims" in full (or in accordance with § 1322(a)(4)). But in this instance the debtor expressly classified the State's claim as a priority claim under section 507(a)(1)(B). The debtor is bound by that language, and the limitations of section 1329(a) preclude the debtor from obtaining the relief he now seeks. *Compare In re Willoughby*, 324 B.R. 66, 75 (Bankr. S.D. Ind. 2005) (court found cause to reconsider a secured creditor's allowed claim in light of new law announced in *Till v. SCS Credit Corp.*, 541 U.S. 465 (2004), "[b]ecause *Till* represents a significant change in the law that has prospective application," and granted the debtor's motion to amend the

plan to reduce the interest rate paid on the creditor's claim on a prospective basis).

## CONCLUSION AND ORDER

In his original claim objection, the debtor presented one question for the Court to resolve: Are there any exceptions to the applicable finality or preclusion doctrines that would allow the Court to recognize a change in precedent concerning the nature of a DSO claim for public assistance overpayment for childcare? The Court answered yes. The debtor then asked a different question in his request to modify his confirmed plan: Can the debtor reclassify a priority claim already expressly provided for in his plan, under section 1329(a)? The Court answers no.

For the foregoing reasons,

IT IS HEREBY ORDERED that the State of Wisconsin's motion to alter or amend the Courts May 13, 2020 order is DENIED.

IT IS FURTHER ORDERED that the State's objection to the debtor's motion to modify his confirmed plan is sustained, and the debtor's motion to modify the plan is DENIED.

Dated: September 24, 2020

By the Court:

Beth E. Hanan
United States Bankruptcy Judge